## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

ORIN BATTLES,

      Petitioner,

v.                                                              Case No. 4:19-cv-216-WS-MJF

MARK INCH,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Orin Battles has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent ("the State") answered, providing relevant portions of the state court record. (Doc. 21). Battles replied. (Doc. 34). The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Battles is not entitled to habeas relief.[1]

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

# I.    BACKGROUND AND PROCEDURAL HISTORY[2]

On January 29, 2011, Battles murdered Amanda Evans-Alexander. As the prosecutor described, it was "a very personal murder." (Doc. 21, Ex. 20 at 594). Battles "wanted her dead, dead, dead. Not just a little dead. Stabbed, beaten, shot, dumped in the water, body concealed, car concealed." (Ex. 21 at 941).

Battles had known Alexander for 27 years. Alexander's mother "took him in" when he was a young man, and made him part of their family. (*Id*. at 611). Alexander and Battles began dating, and were "on-again-off-again boyfriend and girlfriend" for many years. (*Id*.).

Battles lived with Alexander and her mother in a trailer until November 2010. At that time, Alexander's sister, Easter Evans, bought a house for Alexander and their mother, moved the two into the new home, and banned Battles from the premises. Evans also purchased a car—a burgundy Chrysler—for Alexander and their mother to use. After the move, Alexander started dating another man (James Tyson) but, unbeknownst to Evans, also started seeing Battles again.

---

[2] The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the State. (Doc. 21, Exs. 20-21 at 574-972 (Trial Tr.)); *see also Jackson v. Virginia*, 443 U.S. 307 (1979). Citations to the state court record are to the electronically filed exhibits attached to the State's answer. (Doc. 21). If a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom right corner of the page.

Alexander had a job as a housekeeper at a local hotel in Tallahassee. On January 29, 2011, Battles dropped Alexander off at work in the morning, and picked her up at 4:15 p.m. in the burgundy Chrysler. Battles drove Alexander to Payday Loans where she took out a loan for $400.00. Surveillance video from the store captured Battles wiping down the car handles and doors with a white washcloth while Alexander was inside the store. That was the last time Alexander was seen alive.

Later that evening, Battles took Alexander to one of his known fishing spots along a canal, had sexual intercourse with her (using a condom) and then stabbed her in the face, neck, head and shoulder 25 times with a pocketknife she had given to him as a gift. Battles then beat her in the head such that she suffered multiple skull fractures. Leaving nothing to chance, Battles then shot Alexander six times. Battles disposed of Alexander's body and car at another one of his known fishing spots— an area along the Gadsden County side of the Ochlockonee River. He rolled the car down a boat launch into the river and walked away confident that he could not be traced to the murder.

At 6:30 a.m. the following morning, Battles called Evans and reported: "Your sister [is] missing." (Doc. 21, Ex. 21 at 620). Later that day, a woman fishing at the canal discovered the bloody pocketknife amid pools of Alexander's blood. The

police found the used condom and a bloody washcloth nearby. A month later, a fisherman discovered Alexander's body amid a log jam in the Ochlockonee River. Several weeks later, Alexander's submerged car was pulled from the river a short distance from the end of the boat ramp.

Alexander's DNA was recovered from the used condom, the bloodied portions of the white washcloth, and the blade of the pocketknife. Battles's DNA was recovered from the used condom, the washcloth, and the handle of the pocketknife.

The police interviewed Battles at the police station. The interviews were video- and audio-recorded. When officers left the interrogation room and Battles was left alone, he talked to himself. At one point, he reassured himself that the police "ain't going to be able to prove it. They ain't going to be able to prove that I did nothing to Amanda." (Doc. 21, Ex. 21 at 793).

During Battles's pretrial detention at the Leon County Jail, he bragged to a fellow inmate (Mark Moore) that he killed Alexander but that the State couldn't prove it. Battles asked a different inmate at the Leon County Jail (Vincent McKinnon, a prior acquaintance) to write an alibi letter for him falsely claiming to have seen Battles twice—both times alone—at a park and at a store in Tallahassee

between 6:00 and 8:30 p.m. the night of the murder. Battles gave McKinnon a draft of the letter he wanted him to write.

In Leon County Circuit Court Case No. 2011-CF-635, Battles was indicted for First Degree Premeditated Murder. (Doc. 21, Ex. 4). Battles was tried on December 11-12, 2012. (Exs. 20 & 21 (Trial Tr.)). The jury found Battles guilty as charged. (Ex. 21 at 965 (Trial Tr.); Ex. 5 (Verdict Form)). The trial court sentenced him to imprisonment for life. (Ex. 6 (J. & Sentence)).

Battles appealed to the Florida First District Court of Appeal ("First DCA"). Appellate counsel filed an *Anders*[3] brief. (Ex. 8). The First DCA authorized Battles to file a *pro se* initial brief. (Ex. 9). Battles did not file a *pro se* brief. (Ex. 7). Battles filed a motion to dismiss the *Anders* brief, which the First DCA denied. (Exs. 10, 11). The First DCA affirmed Battles's conviction and sentence on November 12, 2013, *per curiam* and without written opinion. *Battles v. State*, 125 So. 3d 155 (Fla. 1st DCA 2013) (Table) (copy at Ex. 12).

On November 24, 2014, Battles filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he later amended. (Ex. 19 at 5-81 (Initial Mot.); Ex. 20 at 354-441 (Am. Mot.); Ex. 20 at 442-531 (Second Am.

---

[3] *See Anders v. California*, 386 U.S. 738 (1967).

Mot.)). The state circuit court summarily denied two of the thirteen claims. (Ex. 20 at 533-54). The circuit court scheduled an evidentiary hearing on Battles's remaining eleven claims, and appointed counsel to assist him. (Ex. 20 at 548, 549, 565).

The postconviction evidentiary hearing was held on May 19, 2017. (Ex. 22 (Evidentiary Hr'g Tr.)). At the close of the hearing, the state court denied relief, making oral findings on the record and stating its reasons for denying relief. (*Id.* at 87-94). The court reduced its ruling to a written order filed the same day. (Ex. 21 at 975). The written order stated, in relevant part: "Based on the reasons as announced on the record, the Court finds that defendant has failed to show that he received ineffective assistance of counsel or that he was prejudiced by any alleged deficiency." (*Id.*). The First DCA affirmed on January 30, 2019, *per curiam* and without written opinion. *Battles v. State*, 263 So. 3d 5 (Fla. 1st DCA 2019) (Table) (copy at Ex. 25). The mandate issued February 27, 2019. (Ex. 26).

While his postconviction proceeding was pending, Battles file a *pro se* petition for writ of habeas corpus in the First DCA on March 8, 2015, alleging ineffective assistance of appellate counsel. (Ex. 16). On April 1, 2015, the First DCA summarily denied relief on the merits. *Battles v. State*, 160 So. 3d 547 (Fla. 1st DCA 2015) (copy at Ex. 17).

Battles filed his *pro se* federal habeas petition on May 6, 2019. (Doc. 1). The petition raises an ineffective-assistance-of-trial-counsel claim with six underlying sub-claims (Ground One), and a claim of trial court error (Ground Two). (*Id*.). Battles asserts that he exhausted his ineffective-assistance-of-trial-counsel claims by presenting them in his Rule 3.850 proceeding. (*Id*. at 13). Battles concedes that he procedurally defaulted his trial court error claim, but argues that his procedural default was caused by ineffective assistance of appellate counsel. (*Id*. at 15).

The State asserts that all of Battles's claims are procedurally defaulted and, alternatively, lack merit. (Doc. 21). In support of its procedural default defense, the State argues that On the issue of procedural default (1) Battles did not fairly present the substance of his ineffective-assistance-of-trial-counsel claims in his postconviction appeal; and (2) Battles did not present his trial court error claim to any state court. (Doc. 21 at 11).

Battles's reply does not address the procedural default defense concerning his ineffective-assistance-of-counsel claims. (Doc. 34 at 2-14). He addresses only the procedural default of his trial court error claim. (*Id*. at 14-15).

## II.    EXHAUSTION AND PROCEDURAL DEFAULT

### A.    Federal Habeas Exhaustion Requirement

Before seeking federal habeas relief under § 2254, the petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). "To satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of his federal claim" to the state's highest court, either on direct appeal or on collateral review. *Picard*, 404 U.S. at 277-78; *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

A petitioner "fairly" presents the substance of his federal claim when he describes the claim "such that [the state courts] are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" *Kelley v. Sec'y Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) (quoting *Picard*, 404 U.S. at 277); *French v. Warden, Wilcox State Prison*, 790 F.3d 1259, 1270-71 (11th Cir. 2015) (reaffirming that a habeas petitioner must "present his claims to the

state court 'such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.'" (quoting *Kelley*, 377 F.3d at 1344-45)).

When a petitioner fails to exhaust his claim and the state court remedy is no longer available, that failure to exhaust is a procedural default. *O'Sullivan*, 526 U.S. at 839-40; *see also Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999) (holding that when a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim now would be procedurally barred under state law, the claim is procedurally defaulted). A petitioner seeking to overcome a procedural default must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

## B.    Battles Procedurally Defaulted His Ineffective-Assistance-of-Trial-Counsel Claims

Battles claims that his trial counsel—two highly experienced death penalty attorneys—were ineffective for: (1) failing to move for a mistrial based on a remark Moore made during his trial testimony; (2) failing to conduct a pretrial investigation of Moore; (3) failing to object to the prosecutor's referring to Battles as a murderer during closing argument; (4) failing to investigate an exculpatory witness, Stephanie Sessions; (5) failing to call Investigator Gereg to testify about the circumstances of

Page 9 of 24

Battles's statements to police; and (6) failing to investigate and compel DNA samples from James Tyson. (Doc. 1 at 5-13 (labeled Ground One Sub-Grounds A-F, respectively)).

The State asserts that all of these claims are unexhausted and procedurally defaulted because Battles failed to complete one full round of Florida's established appellate review process. (Doc. 21 at 11). The State explains that in Battles's postconviction appeal, he did not "fairly present" the merits of any ineffective-assistance-of-counsel claim. Instead, Battles invoked Rule 3.850 and claimed that the postconviction trial court erred as a matter of state law because it did not state any findings of fact or conclusions of law within the text of its written order. (*Id*.). Battles did not respond to the procedural default argument. (Doc. 34).

i.    ***Florida's Established Postconviction Process***

Florida's established postconviction process requires a defendant seeking to vacate his conviction to (1) move for postconviction relief under Florida Rule of Criminal Procedure 3.850, and (2) appeal from the order denying postconviction relief. *See* Fla. R. Crim P. 3.850(a), (k); Fla. R. App. P 9.141(b)(3); *see also Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979); *Rodwell v. Singletary*, 114 F. Supp. 2d 1308, 1312 (M.D. Fla. 2000).

The Florida Rules of Appellate Procedure provide that, when a movant's Rule 3.850 motion is denied after an evidentiary hearing, a movant wishing to appeal the denial of his motion must file an initial brief. Fla. R. App. P. 9.141(b)(3). Where an appellant's brief contains no argument, or even conclusory argument, on a claim, the claim is insufficiently presented for appellate review, and therefore waived. *See Duest v. Dugger*, 555 So. 2d 849, 851 (Fla. 1990) (holding that prisoner waived several issues on appeal where his brief merely cited to arguments contained in his Rule 3.850 motion; "The purpose of an appellate brief is to present arguments in support of the points on appeal. Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived."); *Shere v. State*, 742 So. 2d 215, 217 n.6 (Fla. 1999) (holding that nineteen of prisoner's twenty-three claims raised in his Rule 3.850 motion were "insufficiently presented for [appellate] review" because he "did not present any argument or allege on what grounds the trial court erred in denying these claims."); *State v. Mitchell*, 719 So.2d 1245, 1247 (Fla. 1st DCA 1998) (finding that issues raised in appellate brief which contain no argument are deemed abandoned).

### ii.    *Battles's Postconviction Appeal*

Battles's second amended Rule 3.850 motion raised thirteen grounds of ineffective assistance of trial counsel. (Ex. 20 at 442-531). The state circuit court

Page 11 of 24

summarily denied Grounds 12 and 13, and denied the remaining eleven grounds after an evidentiary hearing. The six ineffective assistance claims Battles raises in his § 2254 petition were presented as Grounds 1, 2, 3, 4, 6 and 9 of his Rule 3.850 motion.

After the state circuit court issued its final order denying relief, Battles appealed and filed an initial brief in the First DCA. Battles's initial brief presented one issue:

> The trial court erred when it failed to provide statements of fact or conclusions of law when denying appellant's amended 3.850 motion after evidentiary hearing.

(Ex. 23 at 2). Battles's summary of the argument provided:

> White v. State, 198 So. 3d 1130 (4th DCA 2016).
>
> The Defendant appeals from the circuit court's order denying his Florida Rule of Criminal Procedure 3.850 motion for postconviction relief after an evidentiary hearing. The defendant argues the court erred in denying his motion without making any findings of fact or conclusions of law supporting the court's determination of the issues, as required by Rule 3.850(f)(8)(A) (2015).
>
> Neither the circuit court's ruling nor the court's written order contained the findings of fact and conclusions of law which rule 3.850(f)(8)(A) requires. Thus, the court erred in denying the motion without making such findings and conclusions.

(Ex. 23 at 6).

The body of Battles's brief relied exclusively on state law to argue that Rule 3.850(f)(8)(A) required the circuit court to provide a statement of facts and

Page 12 of 24

conclusions of law to support its denial of his Rule 3.850 motion; that the circuit court failed to comply with that provision; and that the circuit court's failure to do so deprived the appellate court of the ability to review the circuit court's denial of relief. (Ex. 23 at 7-10). The facts Battles presented to support his argument were confined to the procedural history of his case. He did not enlighten the appellate court as to any claim raised below. (*Id*. at 5, 10). Battles's conclusion stated:

> Here the trial court failed to provide any statement of fact or conclusions of law to support the denial of each claim after evidentiary hearing. Therefore this court should reverse to the low court to do so.

(*Id*. at 10).

Battles's postconviction appellate brief did not identify, list, or even mention any of the thirteen ineffective-assistance claims presented in his amended Rule 3.850 motion. He did not present any facts or law that could have supported an ineffective-assistance-of-counsel claim.

Correspondingly, the State's answer brief addressed this single issue: "Whether the postconviction court made factual findings and conclusions of law when denying the Rule 3.850 motion after an evidentiary hearing?" (Ex. 24 at i). The State quoted the postconviction trial court's oral findings at the evidentiary hearing and also quoted its written order, and argued that the record refuted Battles's contention that the court made no factual findings or legal conclusions. (*Id*. at 2-5).

The State concluded: "Since the record refutes Appellant's claim, then this Court should affirm." (*Id*. at 7, 9). The First DCA affirmed without opinion.

### iii. *Battles Procedurally Defaulted His Ineffective-Assistance-of-Counsel Claims*

The only reported cases in this Circuit confronting the question here—how far a habeas petitioner may stray in his postconviction appeal before his appellate claim is considered different from his underlying postconviction claims (and federal habeas claims)—are *Henry v. Dep't of Corr.*, 197 F.3d 1361, 1367-68 (11th Cir. 1999), and *Holland v. Florida*, 775 F.3d 1294, 1316-17 (11th Cir. 2014).

In *Henry*, the petitioner raised two claims of ineffective assistance of trial counsel in his Rule 3.850 motion. On appeal, he characterized the issue as "whether the trial court erred in denying defendant's motion for postconviction relief without an evidentiary hearing." 197 F.3d at 1363 (internal quotation marks and citation omitted). In arguing this issue, the parties' briefs "*both presented facts and cited law relevant to the substance of his ineffective-assistance claims*." 197 F.3d at 1363 (emphasis added). As relief, Henry requested that the case be remanded for an evidentiary hearing. *Id*. at 1367. The state appellate court affirmed without opinion. *Id*. at 1366.

On federal habeas, the State argued, and the district court adopted, a "relief-centered theory of exhaustion." *Id*. at 1366. The district court concluded that because

Page 14 of 24

Henry requested only an evidentiary hearing in his state postconviction appeal—instead of a new trial—his claim was not enough to meet *Picard*'s "fair present[ation]" test. *Id*. at 1367.

The Eleventh Circuit rejected the relief-centered theory of exhaustion. The court emphasized that "[t]he essence of the exhaustion requirement is that a petitioner's constitutional claims be 'fairly presented' to the state courts such that they have 'an opportunity to apply controlling legal principles to the facts bearing upon them.'" *Id*. at 1366 (quoting *Picard*, 404 U.S. at 275, 277). The court determined that Henry "presented the same basic claims—in both law and fact—to the state and federal courts," and that Henry's request for an evidentiary hearing in his state appeal did not defeat exhaustion. The Eleventh Circuit held:

> Where, as here, state procedure makes it appropriate for a petitioner to request an evidentiary hearing before requesting a new trial, we hold that the difference between a request for an evidentiary hearing in state court and a request for a federal writ under § 2254 (in practical effect here, a request for a new trial) is not enough to render a petitioner's constitutional claims unexhausted.

*Id*. at 1367. The court also recognized:

> [I]f state procedure explicitly demanded more of a petitioner, a request for a hearing might not be enough. Florida's rule, however, makes no such demand. Under Rule 3.850, it is the trial judge who determines how much procedural attention a petition warrants. *See* Fla. R. Crim. P. 3.850(d). Henry's state-court appeal, which requested only the evidentiary hearing denied by the trial judge, was therefore appropriately modest. It asked for the most he could reasonably have

expected from the appeals court—an order vacating and remanding for
an evidentiary hearing.

*Id*. at 1368.

The circumstances of this case are distinguishable from *Henry*. Here, the
dissimilarity between Battles's claim in his state postconviction appeal, and the
claims in his § 2254 petition, goes beyond the relief requested. The claims rely on
different facts and different legal principles. The only facts Battles presented to the
First DCA were the procedural history of his case. (Ex. 23). Even then, he did not
so much as identify any ineffective-assistance claim raised below. (*Id*.). Battles was
aware of the lower court's oral findings and conclusions at the close of the
evidentiary hearing (because he was present), and also was aware of its written order.
Battles, however, did not present any facts or law pertaining to any claim of
ineffective assistance, and instead confined his argument to the state-law procedural
issue. As outlined above, Florida procedures demanded that he present argument on
each claim on which he sought appellate review. The reasoning of *Henry* does not
extend to the circumstances of this case.

This case also is distinguishable from *Holland*. In *Holland*, the petitioner
raised claims of ineffective assistance of trial counsel in his Rule 3.851 motion, and
the state postconviction trial court summarily denied relief without conducting an
evidentiary hearing. *Holland*, 775 F.3d at 1316; *see also Holland v. Tucker*, 854 F.

Page 16 of 24

Supp. 2d 1229, 1297 (S.D. Fla. 2012). In his appeal to the Florida Supreme Court, Holland argued "that it was error for the trial court to summarily deny claims I, II, IV, V, VI, and VII, and that these claims should have been found to be meritorious." *Holland v. State*, 916 So. 2d 750, 758 (Fla. 2005). The Florida Supreme Court denied relief on the merits, concluding that Holland failed to establish that his trial counsel was ineffective. *Id.* at 758-60; *see also Holland*, 775 F.3d at 1304-05, 1316.

On federal habeas, the State argued, and the district court agreed, that Holland's ineffective-assistance claim was unexhausted because "he did not argue it as the denial of any federally protected constitutional right" before the Florida Supreme Court, but rather raised it as a state procedural issue. *Holland*, 854 F. Supp. 2d at 1298. The Eleventh Circuit rejected the district court's conclusion for three reasons:

> Foremost, the exhaustion requirement is satisfied if a claim is "fairly presented" to the state court that had "an opportunity to apply controlling legal principles to the facts bearing upon [it]." *Picard v. Connor*, 404 U.S. 270, 275, 277, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971) (quotation omitted). The Florida Supreme Court had "an opportunity to address [Holland's] claims in the first instance" when it rejected the merits of his *Strickland* claim. *Cone v. Bell*, 556 U.S. 449, 465, 129 S. Ct. 1769, 173 L.Ed.2d 701 (2009) (quotation omitted). The district court's exhaustion decision also is in tension with our precedent recognizing that a petitioner exhausted state remedies by filing a similar 3.850 appeal. *See Henry v. Dep't of Corr.*, 197 F.3d 1361, 1368 (11th Cir. 1999) ("Henry's state-court appeal, which requested only the evidentiary hearing denied by the trial judge, was . . . appropriately modest. It asked for the most he could reasonably have expected from

> the appeals court. . . . Exhaustion should not be construed to mandate more."). Moreover, the State agrees that Holland exhausted his claim and has now expressly waived the exhaustion requirement through counsel. *See* 28 U.S.C. § 2254(b)(3); *Holladay v. Allen*, 555 F.3d 1346, 1348 n. 1 (11th Cir. 2009).

*Holland*, 775 F.3d at 1316-17. None of the circumstances present in *Holland* exist here. Battles did not so much as identify any of his ineffective assistance claims, much less argue that any claim had merit.

Battles did not present any claim of ineffective assistance of counsel in his postconviction appeal. Thus, the six grounds of ineffective assistance he now raises are procedurally defaulted. To hold otherwise would ignore well established exhaustion principles and state procedural rules. *See, e.g., Atwater v. Crosby*, 451 F.3d 799, 809-10 (11th Cir. 2006) (petitioner who received an evidentiary hearing on his Rule 3.850 motion procedurally defaulted particular ground of ineffective assistance when he failed to argue the issue in his postconviction appeal to the Florida Supreme Court; "Pursuant to state procedural rules, abandonment of an issue results from submission of a brief without argument thereon in an appeal of an order denying relief after an evidentiary hearing." (citing *Shere*, 742 So. 2d at 217 n.6)); *see also* Fla. R. Crim. P. 3.850(b), (f) (stating prohibitions on successive Rule 3.850 motions, and those filed more than two years after a defendant's conviction becomes final).

Battles makes none of the requisite showings to excuse his procedural default. (*See* Doc. 34). Battles's procedural default bars federal habeas review of Ground One, Sub-Grounds A-F.

## C.    Battles Procedurally Defaulted Ground Two

Battles claims in Ground Two of his § 2254 petition that the trial court erred when it admitted his statements to police. (Doc. 1 at 14). Battles argues that the statements were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). Battles admits that this claim is unexhausted because he did not present it to any state court. (Doc. 1 at 14-16; Doc. 34 at 15). The State asserts that Battles's claim is procedurally defaulted. (Doc. 21 at 29); *see also* Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence.").

Battles argues that his procedural default is excused under the exception recognized in *Martinez v. Ryan*, 566 U.S. 1 (2012). (Doc. 1 at 15-16; Doc. 34 at 14). The *Martinez* rule, however, relates exclusively to excusing a procedural default of one type of claim—an ineffective-assistance-of-trial-counsel claim. *Id*. at 17. By its very terms, *Martinez* does not apply to a claim of trial court error. *See Lambrix v. Sec'y, Fla. Dep't of Corr.*, 756 F.3d 1246, 1248-49 (11th Cir. 2014) (recognizing

Page 19 of 24

that *Martinez* "announced an equitable rule whereby a federal petitioner may establish cause, in narrow circumstances, to excuse the procedural default of an ineffective-assistance-of-trial-counsel claim.").

In *Coleman*, the Supreme Court recognized that an attorney's errors *during an appeal on direct review* may provide cause to excuse a procedural default. 501 U.S. at 754. Battles, however, cannot avail himself of *Coleman* to excuse his procedural default, because he did not present his ineffective-assistance-of-appellate-counsel claim to the state courts. "The comity and federalism principles underlying the doctrine of exhaustion of state remedies require an ineffective-assistance claim to be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Edwards v. Carpenter*, 529 U.S. 446, 447 (2000).

Battles's state habeas petition alleged that his appellate counsel was ineffective for failing to raise two issues:

> Appellant [sic] counsel failed to attack a "fatal variance" involving an inconsistent verdict compared to the state charging info & counsel neglected to attack a deficiency in inadequate jury instructions that unilaterally deprived movant's jury from being able to justifiably consider a LIO: Manslaughter.

(Ex. 16 at 3). Battles did not claim that appellate counsel was ineffective for failing to challenge the trial court's admission of his statements to police. (Ex. 16).

Page 20 of 24

Because Battles did not present his ineffective-assistance-of-appellate-counsel claim to the state courts, he cannot use it to establish cause for his procedural default of his trial court error claim. *Edwards*, 529 U.S. at 447; *see also, e.g., Dowling v. Sec'y for Dep't of Corr.*, 75 F. App'x 846, 847-48 (11th Cir. 2008) ("Because Dowling did not raise his ineffective assistance of appellate counsel claim in state court and is precluded from seeking additional review of that claim in state court, Dowling's ineffective assistance of appellate counsel claim is procedurally defaulted and cannot be considered as cause for the default of his trial court error claim.").[4]

Battles's procedural default bars federal habeas review of Ground Two.

### III.   CERTIFICATE OF APPEALABILITY IS NOT WARRANTED

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing

---

[4] In his Rule 3.850 motion, Battles claimed that his trial counsel was ineffective for failing to move to suppress his statements to police. The state circuit court rejected that ineffective assistance claim and noted further that "[W]hether [the trial court's ruling admitting the statements] was right or wrong, a ruling was preserved. So that was an issue that could have been raised on appeal or should have been raised on appeal. Not a proper subject of a 3.850." (Ex. 22 at 1073-74).

required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. —, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

#### IV.    CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. The petition for writ of habeas corpus (Doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Orin Battles*, Leon County Circuit Court Case No. 2011-CF-635, be **DENIED**.

2. The District Court **DENY** a certificate of appealability.

3. The clerk of the court close this case file.

At Panama City, Florida, this 6th day of July, 2021.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not**

Page 23 of 24

**<u>control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**